IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER AMATO,** | : | No. 3:03cv2130 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **MAPEI CORP., ROSSI USA CORP., and** | : | |
| **ROSSI SA FRANCE,** | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Presently before the Court for disposition are Defendant Mapei Corporation's Motion for Summary Judgment and Defendant Rossi USA Corporation and Rossi SA France's (collectively "Rossi") Motion for Summary Judgement. Rossi seeks summary judgment on Plaintiff Peter Amato's Complaint and Mapei's cross claim for indemnification. The parties have fully briefed and argued these matters, and they are ripe for disposition. For the following reasons we will grant Rossi's motion in its entirety and grant Mapei's motion in part and deny it in part.

**I.     Background Facts**

This action arises from the construction of the patio and pool in Amato's home. Amato hired a contractor, M.J. Wesko, Inc., to custom build his home. The project lasted from 1997 through 2001. As part of this project, Wesko installed a limestone surface for the patio and pool area. Wesko purchased Rossi's limestone pavers as the surface, and installed the limestone with Mapei's Grani/Rapid setting bed mortar. Wesko purchased the Grani/Rapid Mortar from Arley Wholesale and/or Daltile, Mapei distributers in Scranton,

Pennsylvania. Amato was not involved in the decision to purchase the Grani/Rapid mortar. (Mapei Mot. Summ. J. Exhibit B 11) Rather, Wesko selected the mortar. (Mapei Mot. Summ. J. Ex. H at ¶ 7) The mortar instructions and packaging included a provision limiting Mapei's liability for consequential and incidental damages, as well as requiring thirty days written notice from the date the claimant discovered, or reasonably should have discovered, his claim. (Mapei. Mot. Summ. J. Ex. C, D) After the installation of the limestone, it began to warp, crack, and curl. On September 7, 2000, a Wesko representative called Mapei and explained that he had installed french limestone with Grani/Rapid mortar one year prior and the limestone had curled. (Mapi. Mot. Summ. J. Ex. I)

Amato brings the instant action to recover for the damages resulting from the limestone's cracking, curling, and cupping. Count I is a claim for breach of the implied warranty of merchantability against Mapei. Count II is a claim for breach of the implied warranty of fitness for a particular purpose against Mapei. Count III is a breach of contract claim against Mapei. Count IV advances a claim for breach of express warranty against Mapei. Count V is another breach of contract claim against Mapei. Count VI is a breach of express warranty claim against Rossi. Count VII advances a claim for breach of the implied warranty of merchantability against Rossi. Count VIII puts forth a claim for breach of the implied warranty of fitness for a particular purpose against Rossi. Count IX is a breach of contract claim against Rossi.

**II.   Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiff is an adult individual residing at Rural Route One, Reynolds Road, Dalton, Pennsylvania.  Defendant Mapei is an Illinois corporation with its principal place of business in Florida.  Defendant Rossi USA Corp. is an Illinois corporation with its principle place of business in Illinois.  Defendant Robert Rossi S.A. is a French corporation with an agent authorized to accept service of process in Illinois.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**III.   Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in

the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**IV.   Discussion**

**A.   Rossi Motion**

Rossi argues that we should dismiss Amato's breach of contract claim and his breach of warranty claims. We will address these issues separately.

**1.   Breach of Contract**

Rossi argues that we should grant summary judgment on the contract claim because Rossi and Amato had no contract, and even if they did, Rossi did not breach it. Amato does not assert that he had a contract with Rossi, but instead argues that he was a third party

beneficiary of Wesko's limestone purchase from Rossi. Whether Amato is a third party beneficiary is an issue of law. See Hicks v. Metropolitan Edison Co., 665 A.2d 529, 536 (Pa. Commw. Ct. 1995). We find that Amato has failed to create a genuine issue of material fact that he was the third party beneficiary of Rossi's sale of limestone to Wesko. Pennsylvania has adopted Restatement (Second) of Contracts § 302 for the definition of a third party beneficiary.

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150 (1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979)).[1]

Thus, to establish his third party beneficiary status, Amato must demonstrate that Rossi intended that Mapei would provide the limestone to Amato either to satisfy an existing debt or as a gift. RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(a), (b). Amato has produced no such evidence. Instead, he argues that Wesko provided the limestone to him for his benefit as part of a construction project that he hired it to perform. While Wesko may

---

[1] Additionally, a third party beneficiary will have standing to sue if "both contracting parties . . .expressed an intention that the third party be a beneficiary, and that intention. . . affirmatively appeared in the contract itself." Scarpitti, 609 A.2d at 149 (citing Spires v. Hanover Fire Insurance Co., 70 A.2d 828 (1950)). Amato has not argued that the contract affirmatively expresses that he is a third party beneficiary, and thus we will address the requirements of Restatement § 302.

have intended to provide the limestone to Amato, to satisfy Restatement 302(1)(b) Amato must establish that Rossi intended that Wesko provided it as a gift or to discharge a debt owed by Rossi to Amato.

> Where the promised performance is not paid for by the recipient, discharges no right that he has against anyone, and is apparently designed to benefit him, the promise is often referred to as a 'gift promise.' The beneficiary of such a promise is often referred to as a 'donee beneficiary'; he is an intended beneficiary under Subsection (1)(b).

RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt c.

Amato has produced no evidence that he received the limestone as a gift or to discharge a debt previously owed to him, and therefore, we will enter summary judgment on Amato's contract claim against Rossi because he had no privity of contract and has created no genuine issue of material fact that he was a third party beneficiary.

### 2. Breach of Warranty

Rossi moves to dismiss the breach of warranty claims because its limestone did not malfunction and had no defect. Rossi relies on the expert reports in this case, six in total, each of which finds that the limestone had no defect but cracked because of the expansion of the setting bed mortar.

Amato argues that the limestone's malfunction, *i.e.* the existence of the cracks and the curl in the limestone, is alone sufficient to create a genuine issue of material fact that the limestone had a defect. Amato misstates the relevant law. To recover for breach of warranty, a plaintiff must establish: "(1) that the product malfunctioned; (2) that the

6

plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Altronics v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

Rossi has established the bed setting mortar or the installation caused the cracking, cupping, and curling of the limestone tiles. S.A. Bortz of Wiss, Janney, Elstner Associates, Inc., issued an expert report to Wesko stating, "the expansive nature of the setting bed is likely the cause of the observed cupping." (Rossi Summ. J. Ex. C 2.) The Erlin Company also issued a report for Wesko, concluding "[b]ased on petrographic examinations and length change measurements of the setting bed mortar, the curling is judged to be due to the expansion of the setting bed mortar." (Rossi Summ. J. Ex. D 3.) Daniel Honig, P.E. of Structures Consulting Engineers issued a report to Chubb Group of Insurance Companies, explaining,

> it is my opinion, within a reasonable degree of engineering certainty, that the failure of the exterior paver surface at this residence has been caused by an inappropriate setting bed mortar which has reacted chemically to expand and cause resultant paver distress. The site preparation and limestone pavers themselves appear to be appropriate and suitable for the intended application.

(Rossi Summ. J. Ex. E 5.)

Dipyana Jana, P.G., president of Construction Materials Consultants, Inc., issued a report to Amato, stating, "Based on the laboratory studies of two limestone tile plus setting bed mortar composites, it was concluded that the de-bonding, curling, and cracking of the tile was related to the expansion of the setting bed mortar in the presence of moisture." (Rossi

Summ. J. Ex. F 1.) Donato Pompo of Ceramic Tile and Stone Consultants explained that "failure was caused by a combination of a bond-breaker on the concrete slab, poor and improper installation methods and procedures, and excessive moisture under the substrate that led to the curling and de-bonding of the limestone tile." (Rossi Summ. J. Ex. G 9.) Mapei's analyst explained that his tests revealed that the "sample slab is stable." (Rossi Summ. J. Ex. H.) He further stated that limestone could be installed with: 1) a proper base; 2) a bicomponent cement-adhesive system; 3) a large escape-joint, with Ultracolor or Keracolor GG+ Fugolastic finishing; and 4) Mapeflex PU21 as a sealant for the expansion joints. (Id.)

Each of the six experts concluded that the damage to the limestone had a secondary cause, either expansion of the mortar or improper installation of the mortar. Amato has produced no evidence rebutting the conclusions of these experts.[2] Amato has not created a genuine issue of material fact that the curling, cracking, or cupping had no secondary cause. Therefore, we will grant summary judgment on Amato's warranty claims against Rossi.[3]

**B.      Mapei's Motion**

Mapei presents two arguments in support of its motion for summary judgment. First,

---

[2] Amato relies on the deposition testimony of Mapei's technical services manager, Pierre Habert, who testified that the stone has the capability to curl. (Pl. Ex. A in Opp. Summ. J., Habert Dep. 55-56). This does not create a genuine issue of material fact because it does not address the cause of the curling. Six experts testified that the curling had a secondary cause, and Habert's testimony makes no conclusion regarding the cause of the curling.

[3] For these same reasons, we will dismiss Mapei's cross claim for indemnification.

Amato's contract claims should be dismissed because the product literature did not form a contract. Second, the warranty claims should be dismissed based on Amato's failure to comply with terms included in the product literature. We will discuss each of these arguments separately.

### 1. Breach of Contract

Counts III and V of the Complaint are breach of contract claims against Mapei. Mapei argues that no contract exists. Amato did not purchase the mortar from Mapei; rather, Wesko purchased the mortar from Arley Wholesale or Daltile, two distributors of Mapei products. Wekso then provided the mortar to Amato as part of the construction project. Amato argues that it is not required to establish privity of contract to advance his breach of warranty claims in Counts I, II, and IV. See Spagnol Enterprises, Inc. v. Digital Equipment Corp., 568 A.2d 948, 951 (Pa. 1989) (holding that privity is not a requirement for a breach of warranty claim). While this is so, it is irrelevant to the requirements of his contract claims in Count III and V, which require proof of privity. Corestates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (explaining that a contract claim consists of: 1) the existence of a contract; 2) a breach of a duty imposed by the contract; and 3) resulting damages). Therefore, we will grant summary judgment on Counts III and V.

### 2. Breach of Warranty

Unlike the breach of contract claims, the breach of warranty claims have no privity requirement. Spagnol, 568 A.2d at 951. Mapei argues that the following provision is

binding on Amato and limits his recovery for breach of warranty.

**NOTICE**
*We shall not be liable for incidental and consequential damages, as defined under the uniform commercial code, directly or indirectly sustained, nor for any loss caused by application of these goods not in accordance with current printed instruction or for other than the intended use. Before using, user shall determine the suitability of the product for its intended use. Before using, user shall determine the suitability of the product for its intended use and user alone assumes all risks and liability whatsoever in connection therewith. Our liability is expressly limited to replacement of defective goods. Any claim shall be deemed waived unless made in writing to us within thirty (30) days from the date it was, or reasonably should have been discovered.*
(Mapei Mot. Summ. J. Ex. D)[4]

This notice is included in the mortar bag and instructions. Mapei argues this provision bars Amato's suit because it required thirty days written notice as a precondition to suit, and even if Amato can bring suit, the provision limits his recover to replacement of the goods. Whereas previously Mapei argued that the product literature did not create a contract, here it argues that this provision is binding on Amato. We find a genuine issue of material fact that the above provision binds Amato. In King v. Hilton-Davis, the court predicted that if Pennsylvania courts eliminated the privity requirement for warranty cases, Pennsylvania law would not enforce a limit of liability against a remote purchaser unless the disclaimer was "clearly communicated to the remote party prior to his or her purchase." 855 F.2d 1047, 1053 (3d Cir. 1988). King offered two examples of methods that manufacturers may employ to effectively limit liability to the remote purchaser: 1) conspicuous display of the provision in the literature included in the product; and 2) contracting with the distributer to expressly reference the limit in the distributer's contracts with customers. Id. at 1054; see also

---

[4] The notice, as reproduced here, is approximately the same size as it appears on the bag and in the instructions. We reproduce it in the similar size as the size of the font will be relevant to our discussion.

Infocomp, Inc. v. Electra Products, Inc., 109 F.3d 902, 908 (3d Cir. 1997) ("[R]emote purchasers must be specifically notified of a manufacturer's intent to limit damages if that limitation is to be effective.").

We find the rule enunciated in King consistent with subsequent developments in Pennsylvania law. In Moscatiello v. Pittsburgh Equipment Co., the plaintiff purchased a paving machine from a distributer, but sued Curbmaster, the manufacturer, when the machine did not perform as expected. 595 A.2d 1198, 1199-1200 (Pa. Super. Ct. 1991). Curbmaster argued that if the plaintiff was entitled to assert a breach of warranty claim directly against it in the absence of privity, then the terms of its warranty exclusions should be binding on him. Id. at 1204. The court disagreed, and found the warranty exclusions inapplicable "due to the failure of Curbmaster to establish that Moscatiello ever received the agreement." Id. "[T]he fact that the agreement never was provided to Moscatiello, in our view, renders its provisions inapplicable to Moscatiello." Id. Thus, as predicted in King, Moscatiello established that a warranty exclusion will not bind a remote buyer unless the term is communicated to him.

Recently, Goodman v. PPG Industries held that even without a privity requirement, a plaintiff asserting a claim for express warranties must establish that he was aware of the specific terms of the warranty. 849 A.2d 1239, 1245-46 (Pa. Super. Ct. 2004). There, the plaintiffs asserted a breach of express warranty claim against PPG based on defects in a PPG manufactured wood preservative. Id. 1241-42. PPG expressly warranted to Marvin Lumber and Cedar Company that the wood preservative would protect wood for twenty-six years.

11

Id. at 1241. Marvin used the preservative in its windows, and then sold the windows to the plaintiffs. Id. When the wood in the windows rotted, the plaintiffs sued PPG for breach of the express warranty from PPG to Marvin. Id. at 1241-42. The court noted that Pennsylvania had dispensed with the privity requirements for breach of warranty claims, but found that the nature of express warranties required that a plaintiff relying on an express warranty must demonstrate that he was aware of the term when he purchased the product. Id. at 1245. Contrasting implied warranties with express warranties, the court observed that whereas "manufacturers have no choice but to extend implied warranties to the general public . . . .express warranties are bargained, 'dickered,' individualized promises that the goods will perform up to the specific standards set forth in that warranty." Id. It further reasoned, "given that express warranties are based on the notion of offer and acceptance, it would appear incongruous to allow third parties the benefit of an express warranty when no evidence exists that they were even aware of the terms of the warranty." Id. at 1245-46.

Just as it would be incongruous to allow a remote consumer to benefit from an express warranty of which it was unaware, a remote consumer, absent "an express contract with the remote party," will not be bound by a term unless "it is clearly communicated to the remote party prior to his or her purchase." King, 855 F.2d at 1053. We find that Amato has established a genuine issue of material fact that the provision was not communicated to him prior to his purchase either by express communication through the chain of distribution or through conspicuous display of the provision in the product literature and packaging.

12

Mapei does not argue that any entity in the chain of distribution expressly communicated the provision to Amato, and instead argues that the term was conspicuously displayed in the product packaging and literature.[5] We find this provision inconspicuous, intentionally buried from the purview of the party it is intended to affect. The test is whether a term is "so written that a reasonable person against whom it is to operate ought to have noticed it." Moscatiello v. Pittsburgh Contractors Equipment Co., 595 A.2d 1190, 1193 (Pa. Super. Ct. 1991) (quoting 13 PA. CONS. STAT. ANN. § 1201).

In Moscatiello, the court found a clause included on the back of a form contract inconspicuous. Id. The front of the contract warned, "TERMS AND CONDITIONS ON REVERSE SIDE ARE AN INTEGRAL PART OF THIS ORDER." Id. The reverse side contained eighteen numbered paragraphs in "extremely small type, approximately one-sixteenth inch in height." Id. The term in question was "buried in paragraph sixteen at the bottom of the page." Id. The court observed, "though the operative language of the disclaimer is set forth in capital letters, the size of the type of the capital letters is so minute that it simply does nothing to attract attention to the clause." Id. at 1193-94.

The provision presently before the court appears in two places, the product literature included with the mortar and the mortar packaging. In both places the contractual terms are the same size font, one sixteenth of an inch in height, that the Moscatiello court found

---

[5] Mapei and Amato addressed the inconspicuousness of the term within the context of an unconscionability argument. We will discuss it in the context of contract formation because Mapei raised this issue by strenuously arguing that the product literature did not form a contract.

13

inconspicuous, calling it "some of the 'finest' print this court has ever read." Id.

The product literature is a three page document containing: 1) a product description; 2) an explanation of the proper uses; 3) the limitations on the product uses; 4) twenty six individually numerated paragraphs of instructions; and 5) a table of the properties and capabilities of the product. (Def. Ex. D). The contractual provision is on the last page, and is the very last term. The text of the provision is in italics, whereas the rest of the document is not. The text of the provision is the same size as the text of the rest of the document, and is approximately the same size as it appears supra at the beginning of this section. The header of the provision reads "NOTICE," in bold type of the same size as the headings on the front page, which include "DESCRIPTION," "USES," "LIMITATIONS," "RECOMMENDED SUBSTRATES," and "NOTE." In sum, there is nothing to call attention to the provision in the product literature. Although it is in italics,[6] it is on the last page in type of the same size as the rest of the document. The provision's heading does not call attention to the reader that it contains any contractual term. Additionally, the front page and contents of the document give the reader no indication that it contains contractual terms. A reasonable reader of the product

---

[6] We recognize that "language in the body of a form is conspicuous if it is in larger or other contrasting type or color," 13 Pa. C. S. A. § 1201, and the relevant language here is in italics whereas the rest of the type was not. The primary consideration, however, is whether a reasonable person ought to have noticed it. Even with the italics, no reasonable person ought to have noticed this term because the type is so small that the difference between the italics and the regular type is barely discernable. In Moscatiello, the operative language contrasted from the rest of the document because it was set forth in capital letters, but the court found other considerations, including the extremely small font size, countervailing factors in finding that no reasonable person would have noticed the language. 595 A.2d at 1193.

literature would view the document as a set of instructions and a description of the product, and would have no reason to notice the contractual provision appended at the very end.

The provision in the product packaging is on similar footing. The mortar is packaged in a fifty pound bag. The front of the bag displays the name of the company and the product in inch high letters, followed by the description "fast-setting latex hydraulic mortar" in slightly smaller font. Large letters at the bottom of the front of the bag provide two warnings in English, French, and Spanish. The back of the bag contains three columns of text, the first is English, the second French, and the third is Spanish. The columns contain ten point font, and have ten paragraphs, some of which are further divided into bullet points or numbered provisions. The back of the bag essentially outlines the same information in the instructions. It begins with a description of the product, outlines the uses and limitations, has instructions for mixing and the application, contains a warning about working in cold temperatures, describes the coverage, and warns the user to employ personal protection when using the product. The contractual term in question is at the very bottom of the back of the bag. It is in the same size type as the rest of the proximate text, it is in italics, and it contains a heading that simply says "NOTICE." The heading is the same size and font, approximately ten point, as twelve other headings. The heading is the same size as the "MADE IN U.S.A." indication and is smaller than the numbers on the bar code on the back of the bag. Additionally, the provision is not given its own paragraph and the heading is in the middle of the column and not set off next to the margin. Nothing on the front of the bag and no header on the back of the bag

gives any indication that the bag contains contractual terms.

We find that the term in question is inconspicuous as a matter of law. Like the term in Moscatiello, the font of the contractual provision is one sixteenth of an inch in height, is buried at the bottom of the page, and is not on the front of the relevant document. Arguably, the term in Moscatiello was more noticeable because it was included in a contract, and the front of the contract called the reader's attention to integral terms on the reverse side. Here, the terms were not included in a contract, but were in product literature and packaging that gave no indication that they contained integral terms or conditions. Therefore, we find that no reasonable person presented with the bag or the product literature would notice the provision, and the contractual term is inconspicuous.

Thus, we find a genuine issue of material fact that the provision was communicated to Amato prior to his purchase, and we will deny Mapei's motion for summary judgment on Amato's breach of warranty claims.

**V.     Conclusion**

Therefore we will grant summary judgment on Amato and Mapei's claims against Rossi. Furthermore, we will grant summary judgment on Amato's contract claims against Mapei. We will deny the motion for summary judgment on Amato's breach of warranty claims against Mapei. Accordingly, the sole remaining claims will be: Count I, breach of the implied warranty of merchantability against Mapei; Count II, breach of the implied warranty of fitness for particular purpose against Mapei; and Count IV, breach of express warranty

against Mapei.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER AMATO, | : | No. 3:03cv2130 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| MAPEI CORP., ROSSI USA CORP., | : | |
| ROSSI SA FRANCE, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 12th day of December 2005, Rossi's Motion for Summary Judgment (Doc. 33) is hereby **GRANTED**. Mapei's Motion for Summary Judgment (Doc. 30) is hereby **GRANTED** in part and **DENIED** in part. Summary judgment is granted on Count III and V, Plaintiff's breach of contract claims, but we deny the motion as to the breach of warranty claims.

                                                                       BY THE COURT:

                                                                        **s/ James M. Munley** _____
                                                                         **JUDGE JAMES M. MUNLEY**
                                                                         **United States District Court**